# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

YASMEEN JASMILLA TAYLOR,

       Defendant-Appellant.

UNPUBLISHED
April 24, 2018

No. 329849
Wayne Circuit Court
LC No. 15-002737-01-FC

ON REMAND

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

On March 7, 2017, this Court issued an opinion affirming defendant's convictions, but remanding for further sentencing proceedings pursuant to this Court's decision in *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015) ("*Steanhouse I*"), aff'd in part, rev'd in part 500 Mich 453 (2017).[1] On October 31, 2017, our Supreme Court entered an order reversing "that part of the judgment of the Court of Appeals remanding this case to the trial court for proportionality review and for a hearing pursuant to *People v Lockridge*, 498 Mich 358 (2015), and *United States v Crosby*, 397 F3d 103 (CA 2, 2005)." *People v Taylor*, 501 Mich 906; 902 NW2d 881 (2017). The Supreme Court remanded the case "to the Court of Appeals for plenary review of the defendant's claim that her sentence for second-degree murder was disproportionate under the standard set forth in *People v Milbourn*, 435 Mich 630, 636 (1990). See *People v Steanhouse*, 500 Mich 453, 460-461 (2017) [("*Steanhouse II*")]." *Id*. On remand, we again remand to the trial court for resentencing.

## I. FACTS AND APPELLATE PROCEEDINGS

Defendant, Yasmeen Jasmilla Taylor, was convicted by a jury of "second-degree murder, MCL 750.317, assault with intent to murder [(AWIM)], MCL 750.83, and possession of a

---

[1] *People v Taylor*, unpublished per curiam opinion of the Court of Appeals, issued March 7, 2017 (Docket No. 329849).

-1-

firearm during the commission of a felony (felony-firearm), MCL 750.227b." *Taylor*, unpub op at 1. This Court described the incident that gave rise to these convictions in its prior opinion:

> This case arises from the death of Marquez Douglas (Douglas), and the assault of Latoya Johnson. Defendant, who testified at trial, offered a defense of alibi and denied being present at the crime scene or in the state on the day of the offense. In contrast, the prosecution presented the testimony of Johnson. Johnson testified that on February 13, 2015, she, her children, brother Milton, and [Douglas] lived at the house of Alicia Johnson, her mother, located at Teppert [S]treet, in Detroit. [Johnson] testified that Douglas returned home around 5:50 a.m. accompanied by defendant whom she had seen previously. Johnson overheard conversational exchanges between defendant and Douglas both of whom were in Douglas's bedroom. At some point, the conversation and laughter were replaced by about 15 minutes of silence that ended with a single gunshot. As she was seeking cover, Johnson heard approximately five more gunshots. Minutes later, defendant entered the room where Johnson was hiding, and despite her pleading[,] shot her. Johnson called 911, and she then went to the living room. She saw Douglas on the floor of the living room. Douglas had a pulse, but he was not responsive. She testified that Douglas "was shot above the chest on his left side and on his stomach on his left side." When the police arrived, Johnson gave them a statement. Eventually, defendant was apprehended in Huntington, West Virginia[.] [*Id.* at 1.]

The sentencing guidelines recommended a minimum sentence range of 225 to 375 months. The trial court departed from this range and sentenced defendant to "39 to 55 years' imprisonment for the second-degree murder conviction, 20 to 30 years' imprisonment for the assault with intent to murder conviction, and two years' imprisonment for the felony-firearm conviction." *Taylor*, unpub op at 1 (Docket No. 329849). The trial court explained its rationale in a written sentencing memorandum from which it read from at sentencing:

> This court has taken into account the sentencing guideline minimum range of 225 to 375 months. This guideline minimum range, however, does not fully reflect the brutality and heartlessness of Ms. Taylor's attack on Mr. Douglas and Ms. Johnson. The testimony was clear that Ms. Taylor shot Mr. Douglas once, paused, then proceeded to pump three to four more rounds into him. The testimony of both Ms. Johnson and the medical examiner support that Ms. Taylor shot Mr. Douglas multiple times. The defendant then proceeded into Ms. Johnson's bedroom and, while Ms. Johnson pled for her life, aimed the gun at Ms. Johnson's head and pulled the trigger. She then fled the scene and ultimately the state, ending up in West Virginia. Her testimony at trial – from her denial of the phone records to her denial of even being in the state – was fantastical and utterly unconvincing.

> Given the excessively violent nature of Ms. Taylor's fatal assault of Mr. Douglas, and her coldblooded firing of a gun at Ms. Johnson's head, as well as the evidence presented at trial that clearly established Ms. Taylor's guilt, this court sentences the defendant as follows:

1. On the felony firearm count – two years . . . ;

2. On Count 1 – Homicide – Murder, Second Degree, 39 to 55 years . . . ;

3. On Count 2 – [AWIM], 20 to 30 years . . . to run concurrent with the sentence on Count 1, Murder, Second Degree.

The trial court highlighted the fact that the deceased was shot multiple times with a pause before a second series of shots were fired, and that the survivor begged for her life before she too was fired upon.

On appeal, defendant raised two issues: (1) that the trial court abused its discretion by failing to dismiss a particular juror for cause, and (2) that the trial court's sentence for second-degree murder was unreasonable. *Taylor*, unpub op at 3-6. This Court rejected the first argument, finding that defendant "failed to carry her burden to demonstrate that juror H was either biased or incompetent." *Id*. at 4. With regard to the sentencing question, this Court relied on *Steanhouse I* to conclude that, "despite the trial court's extensive explanation for its upward departure, a remand to the trial court is necessary for the trial court to consider the principle of proportionality." *Id*. at 6. Because a remand was necessary under *Steanhouse I*, this Court declined to "reach [defendant's] arguments concerning the unreasonableness of her sentence." *Id*.

The defendant filed an application for leave to appeal in the Supreme Court and the prosecutor filed a cross-application for leave to appeal. On October 31, 2017, our Supreme Court entered an order stating, in relevant part:

> [T]he application for leave to appeal . . . and the application for leave to appeal as cross-appellant are considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal. we REVERSE that part of the judgment of the Court of Appeals remanding this case to the trial court for proportionality review and for a hearing pursuant to *People v Lockridge*, 498 Mich 358 (2015), and *United States v Crosby*, 397 F3d 103 (CA 2, 2005). We REMAND this case to the Court of Appeals for plenary review of the defendant's claim that her sentence for second-degree murder was disproportionate under the standard set forth in *People v Milbourn*, 435 Mich 630, 636 (1990). See [*Steanhouse II*, 500 Mich at 460-461]. In all other respects, the applications for leave to appeal are DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Taylor*, ___ Mich ___; 902 NW2d 881.]

As this Court recently explained in *People v Dixon-Bey*, 321 Mich App 490; ___ NW2d ___ (Docket No. 331499, September 26, 2017), lv pending:

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, *People v*

*Houston*, 448 Mich 312, 321-322; 532 NW2d 508 (1995), see also *Milbourn*, 435 Mich at 657, (2) factors not considered by the guidelines, *Houston*, 448 Mich at 322-324, see also *Milbourn*, 435 Mich at 660, and (3) factors considered by the guidelines but given inadequate weight, *Houston*, 448 Mich at 324-325, see also *Milbourn*, 435 Mich at 660 n 27. [*Dixon-Bey*, 321 Mich App at ___; slip op at 18-19.]

This Court granted leave to file supplemental briefs to address *Dixon-Bey* and other cases released since the initial briefing.

## II. RESENTENCING

The essence of the prosecutor's argument is that *Dixon-Bey* was erroneously decided. Specifically, that *Dixon-Bey* takes the wrong approach, and is inconsistent with *Lockridge* and *Steanhouse II*. *Dixon-Bey*, the prosecutor asserts, erroneously focused on the basis for departure, rather than the proportionality of the overall sentence, making the guidelines quasi-mandatory. According to the prosecutor, *Dixon-Bey* comes "perilously close to treating the guidelines as quasi-mandatory," and "creates a presumption that a sentence outside the guidelines range is disproportionate" by requiring trial courts to show that a departure sentence is more reasonable and proportionate than a guidelines sentence. While acknowledging that *Dixon-Bey* is binding authority, see MCR 7.215(C)(2) and (J)(1), the prosecutor urges this Court to disregard *Dixon-Bey*'s mode of analysis. The prosecutor's position is that the trial court did nor err in resentencing because it is entirely permissible to depart for reasons already considered when the trial court scores the PRVs and OVs.

The defendant vigorously argues that *Dixon-Bey* mandates resentencing in this case because the trial court failed to consider any mitigating factors such as the defendant's educational attainment and most importantly failed to justify the extent of the departure in any meaningful way.

### A. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is an abuse of discretion. *Steanhouse II*, 500 Mich at 471.

### B. ANALYSIS

We agree that the trial court erred in its re-sentencing on remand in two ways: basing the departure on "excessive brutality" and failing to articulate its analysis or reasons for the extent of the departure.

The trial court's sentencing memorandum described the murder as "excessively violent." Yet, just as was the case in *Dixon-Bey*, the trial court did not assign any points to OV 7. OV 7 addresses the issue of excessive brutality. This point was made in this Court's recent decision in *Steanhouse III*, ___ Mich App at ___; slip op at 4:

A trial court must score OV 7 at 50 points if the offender treated the victim with "excessive brutality." MCL 777.37(1)(a). For the purpose of OV 7, excessive brutality requires savagery or cruelty beyond the usual brutality of the crime. *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds by *People v Hardy*, 494 Mich 430; 835 NW2d 340 (2013). Here, the trial court expressly stated that scoring OV 7 was not appropriate because although the facts were "horrendous" they were not "indicative of something that would be beyond the convicted offense, beyond what's necessary for assault with intent to murder." We conclude that, having determined that the facts of this case only encompassed the usual brutality of an assault with intent to murder, the trial court's later decision to use the brutality of the crime to support an upward departure was not a valid consideration.

Additionally the trial court did not state the basis for the extent of the departure, which as noted before was significant. It is incumbent on the trial court to not only state the reasons why it is proper to depart from the sentencing guidelines, but to explain why the extent of the chosen departure is proportionate to the offense and the offender. *Dixon-Bey*, ___ Mich App at ___; slip op at 19, quoting *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008) (noting that the trial court's sentencing decision must " 'include[] an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been[.]' "). As our Supreme Court explained in *Smith*, 482 Mich at 304:

> Appellate courts are obliged to review the trial court's determination that a reason exists for departure. Accordingly, the trial court's justification "must be sufficient to allow for effective appellate review." In [*People v Babcock*, 469 Mich 247, 258-259; 666 NW2d 231 (2003)], this Court explained that an appellate court cannot conclude that a particular . . . reason for departure existed when the trial court failed to articulate that reason. Similarly, if it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified. A sentence cannot be upheld when the connection between the reasons given for the departure and the extent of the departure is unclear. When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been.

Or, as *Milbourn* explained, even where a departure seems warranted, the extent of the departure may present a violation of the principle of proportionality. *Milbourn*, 435 Mich at 660. And as the *Milbourn* Court emphasized, "Too frequently reasons are given for a sentence that apply equally to a lesser or greater sentence unless an explanation is offered on the record for the specific sentence given." *Id.* (quotation omitted).

In this case, the trial court stated the reasons that a departure was warranted; one of which was an abuse of discretion, being in direct conflict with the scoring of the guidelines. Missing, however, was any explanation of why the specific sentence was warranted under the facts of the case. On remand, and assuming the trial court again imposes a departure sentence on bases other than excessive brutality, the trial court must articulate "why the sentence imposed is more

proportionate than a sentence within the guidelines recommendation would have been." *Smith*, 482 Mich at 304.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro