# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GUY LOUIS SHELTON,

        Defendant-Appellant.

UNPUBLISHED
July 9, 2015

No.  321051
Grand Traverse Circuit Court
LC No.  13-011724-FH

Before:  Ronayne Krause, P.J., and Murphy and Servitto, JJ.

Per Curiam.

Defendant appeals as of right the sentence imposed after his conviction following a jury trial of criminal sexual conduct in the second degree (CSC II), MCL 750.520c(1)(a) (victim under thirteen).  The trial court sentenced him as a habitual second offender, MCL 769.10, to 8 to 22½ years' imprisonment.  We affirm.

In 1997, defendant pleaded nolo contendere to attempted CSC II.  The charge stemmed from an incident where defendant's stepdaughter, then six years old, stroked his penis while the two were bathing together.  Defendant underwent three years of sex-offender treatment following his release from jail.  Defendant married for a second time in 2003 to a woman with two children, one of whom is the victim in this case.  This victim testified that that one evening in 2006, when she was seven years old, defendant came into her room wearing silky boxer shorts, closed the bedroom door, exposed his erect penis to her, and told her to grab it.  She said she complied, moving her hand back and forth once in a pulling motion, but that defendant did not ejaculate.  The victim did not reveal the incident until 2013, after defendant married a third time in 2011 to another woman with a preteen daughter.  Unlike the 1997 allegations, defendant denied the 2006 allegations.  Following trial in this matter, the parties acknowledged that defendant was being investigated for inappropriate contact with the 8-year-old daughter of his third wife, who maintained defendant's innocence.

Defendant's minimum sentence under the guidelines range was 5 to 21 months. However, MCL 750.520f(1) provides that if a person is convicted of a second or subsequent offense under certain enumerated statutes, including MCL 750.520c, the sentence imposed for the second or subsequent conviction "shall provide for a mandatory minimum sentence of at least 5 years."  The trial court here imposed a minimum sentence of 8 years, a departure from both the

guidelines and statutory minimum which defendant asserts was not proportional to him or the offense. We disagree.

In *People v Anderson*, 298 Mich App 178, 184; 825 NW2d 678 (2012), this Court articulated the standards of review governing a departure from the sentencing guidelines:

> If the trial court departs from the sentencing guidelines, this Court reviews for clear error whether a particular factor articulated by the trial court exists. A trial court's determination that a factor is objective and verifiable presents a question of law that this Court reviews de novo. This Court reviews for an abuse of discretion the trial court's conclusion that the factors provide substantial and compelling reasons to depart from the guidelines. The trial court abuses its discretion when its result lies outside the range of principled outcomes. [(citations omitted).]

Following the enactment of the statutory sentencing guidelines, the trial court is "required to choose a sentence within the guidelines range, unless there is a 'substantial and compelling' reason for departing from this range" and states the reasons for the departure on the record. *People v Babcock*, 469 Mich 247, 255-56; 666 NW2d 231 (2003); MCL 769.34(3). A substantial and compelling reason is one that is objective and verifiable, that keenly or irresistibly grabs the attention of the court, is of considerable worth in deciding the length of a sentence, and exists only in exceptional cases. *Babcock*, 469 Mich at 258 (quotations omitted). However, "[t]he trial court may not base a departure 'on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record . . . that the characteristic has been given inadequate or disproportionate weight.' " *Anderson*, 298 Mich App at 183 (citations omitted).

Moreover, "[i]n determining whether a sufficient basis exists to justify a departure, the principle of proportionality-that is, whether the sentence is proportionate to the seriousness of the defendant's conduct and to the defendant in light of his criminal record-defines the standard against which the allegedly substantial and compelling reasons in support of departure are to be assessed." *Babcock*, 469 Mich at 262. "[T]he statutory guidelines require more than an articulation of reasons for a departure; they require justification for the *particular* departure made." *Anderson*, 298 Mich App at 183-184. Thus, "the trial court . . . must justify *on the record* both the departure and the extent of the departure." [Citations omitted; emphasis in original; alteration by *Anderson* Court.] In other words, "[w]hen departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). If a trial court fails to properly articulate substantial and compelling reasons justifying the departure, this Court "must remand the case to the trial court for resentencing or rearticulation of its substantial and compelling reasons to justify its departure." *Babcock*, 469 Mich at 260-261. "[I]f a minimum sentence under MCL 750.520f(1) exceeds 5 years and is higher than the top of the applicable guidelines range, it constitutes a departure." *People v Wilcox*, 486 Mich 60, 70; 781 NW2d 784 (2010).

At sentencing, the trial court articulated several reasons justifying a departure from the sentencing guidelines and the mandatory minimum sentence under MCL 750.520f. First, the

trial court noted that defendant committed the instant offense after completing what was said to have been successful sex-offender counseling following his 1997 CSC conviction. Second, the trial court concluded that whether scored or not, the sentencing guidelines gave insufficient weight to the 1997 conviction and other uncharged sexual misconduct, given the lapse in time between the incidents and the nature of defendant's pattern of targeting little girls for abuse in connection with a family or step-child relationship. Third, the trial court noted defendant made statements in 1997 indicating that his sexual impulses were out of control. As noted in the presentence investigation report (PSIR), defendant reported in 1997 that he had known for a long time that he needed help, that he had always been obsessed with sex, that if he saw an attractive girl he could not get her out of his mind, and that he masturbated several times a day, "morning, night and in between." The PSIR acknowledged that defendant denied making these statements during the 1997 investigation, but that during the current presentence interview, he did not deny making them and appeared to be in agreement with them.[1]

While defendant complains that the trial court did not know the details surrounding his sex-offender treatment, including how many sessions he participated in, defendant confirmed during trial that he received three years of counseling following his 1997 conviction and described them as weekly group sessions, during which group participants would talk about their offenses and methods to avoid future offenses. This provides sufficient knowledge of the program for the court.

Given defendant's 2006 CSC II conviction, the failure of that program of counseling to prevent future sexual assaults is capable of being confirmed, as are the statements defendant made in connection with the 1996 incident, which were documented in the PSIR. All of these factors are of considerable worth in determining the appropriate sentence. Indeed, they demonstrate that defendant's sexual impulses are out of his control and likely dangerous to those around him. This speaks directly to defendant's likelihood of recidivism. His characterization of the 1996 incident as a "relapse" (i.e., the return of a previously purged disorder) is of little consequence. The point is that the criminal behavior has not been eradicated.

The trial court also properly concluded that defendant's conduct leading to his 1997 CSC II conviction was given inadequate weight by the sentencing guidelines. Defendant pleaded nolo contendere to CSC II in 1997, but he does not deny, as reflected in the PSIR, that there was at least one additional act of sexual misconduct involving his first victim that went uncharged. As the trial court correctly concluded, neither of these acts were scored under offense variable 13 because they did not occur within a 5-year period, MCL 777.43(2)(a), and any uncharged acts were not scored for purposes of defendant's prior record variables. And even if these prior acts had been scored under the guidelines, the trial court aptly concluded that scores for the prior offenses would not have taken into consideration the seriousness of defendant's actions, i.e., the sexual abuse of girls under the age of 10 entrusted to his care in a family relationship.

_____

[1] At the sentencing hearing, defendant's counsel stated he had no changes, additions, or corrections to make to the PSIR.

Additionally, defendant's pattern of abusing the minor daughters of the women he has married raises a legitimate concern that the daughter of his third wife could be endangered, especially in light of his third wife's testimony that she was not concerned about the 1997 incidents, and evidence that she told defendant she loved him and did not want the allegations regarding his assault of her daughter to break them apart.

Accordingly, we conclude that the trial court did not abuse its discretion in sentencing defendant to an additional three years beyond the minimum sentence mandated under MCL 750.520f.

Affirmed.

/s/ Amy Ronayne Krause
/s/ William B. Murphy
/s/ Deborah A. Servitto