# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTOINE EUGENE GOGINS,

        Defendant-Appellant.

UNPUBLISHED
July 9, 2015

No. 325682
Grand Traverse Circuit Court
LC No. 2014-011877-FH

Before: O'CONNELL, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Antoine Eugene Gogins, appeals by delayed leave granted[1] his sentence following his guilty plea to delivering less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*). The trial court sentenced defendant to serve 3 to 20 years' imprisonment, an upward departure from defendant's recommended sentencing range under the legislative sentencing guidelines, MCL 777.1 *et seq*. We affirm.

## I. BACKGROUND FACTS

At defendant's preliminary examination, Connie Hamilton-Lowe testified that she sold drugs that she received from David Ruff "pretty much all the time" out of her house near Traverse City. According to Hamilton-Lowe, in May 2014, Ruff brought defendant to her house. For three days, she received drugs from defendant.

The presentence investigation report (PSIR), which neither party challenged the factual accuracy of below,[2] indicated that defendant was initially from Illinois and was one of several people that Ruff brought in to expand his drug sales operation in the Traverse City area. According to the PSIR, an individual who was arrested and interviewed after purchasing cocaine

---

[1] *People v Gogins*, unpublished order of the Court of Appeals, entered March 18, 2015 (Docket No. 325682).

[2] "A presentence report is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003).

-1-

from Hamilton-Lowe informed police officers that defendant was controlling the drug sales in Hamilton-Lowe's residence. The individual indicated that defendant would refuse to give Hamilton-Lowe more heroin unless she gave him additional money and, at one point, Hamilton-Lowe yelled at defendant that "she was selling thousands of dollars of heroin for him and wanted more heroin than he was giving her . . . ." The PSIR also indicated that during an interview, Hamilton-Lowe stated that defendant was responsible for the drugs and money that Ruff brought up from the Grand Rapids area.

Following the preliminary examination, defendant pleaded guilty as stated above in exchange for the prosecution's agreement to drop additional delivery, possession, and conspiracy charges. At sentencing, defendant challenged the presentencing officer's recommended assessment of 10 points for offense variable (OV) 14, MCL 777.44, which concerns leadership in multiple offender situations. The trial court agreed that OV 14 did not apply because defendant was "an enforcer" and the equivalent of a "regional sales manager" instead of a leader. The trial court determined that there was no provision in the sentencing guidelines "for being part of the administration."

The trial court decided to depart upward from defendant's sentencing guidelines recommendation of 0 to 17 months' imprisonment. The trial court found that defendant's case involved a significant retail drug sales operation instead of a minimal distribution scheme. It described defendant as "David Ruff's manager in Connie Lowe's drug house." It opined that heroin was a significant public health problem. The trial court determined that principles of proportional punishment demanded an upward departure because of the amount of transactions, significant volume of heroin sold from the home, and defendant's mid-level management role.

## II. STANDARD OF REVIEW

When reviewing a trial court's grounds for departing from the sentencing guidelines, this Court reviews for clear error the trial court's factual finding that a particular factor in support of departure exists. *People v Babcock*, 469 Mich 247, 264-265; 666 NW2d 231 (2003). The trial court clearly errs when we are definitely and firmly convinced that it made a mistake. *People v Waclawski*, 286 Mich App 634, 693; 780 NW2d 321 (2009). We review de novo whether a factor is objective and verifiable. *Babcock*, 469 Mich at 264. We review for an abuse of discretion the trial court's determination that the factors in a particular case are substantial and compelling reasons to depart from the guidelines, and we also review for an abuse of discretion the amount of the trial court's departure. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). An abuse of discretion occurs when the trial court's outcome falls outside the range of principled outcomes. *Babcock*, 469 Mich at 269.

## III. ANALYSIS

First, defendant contends that the trial court erred when it departed upward from the sentencing guidelines without articulating substantial and compelling reasons. We disagree.

This Court closely scrutinizes the trial court's departure from the guidelines on appeal. *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994). A trial court may depart from the appropriate guidelines range only if it states on the record substantial and

compelling reasons for the departure, meaning the facts supporting its reasons are objective and verifiable, keenly grab our attention, and are of "considerable worth" when determining a sentence. MCL 769.34(3); *Babcock*, 469 Mich at 257-258. Facts are objective and verifiable when they are actions or occurrences external to the mind that are capable of being confirmed. *People v Anderson*, 298 Mich App 178, 183; 825 NW2d 678 (2012).

We conclude that the trial court's stated reason for departing upward from the sentencing guidelines was substantial and compelling. In this case, the trial court stated that it was departing upward because of defendant's role as a mid-level enforcer in a significant retail drug trafficking operation. Defendant's role in Ruff's drug trafficking organization is objective and verifiable— Hamilton-Lowe and another informant provided information about this role, which was clearly external to the trial court's mind. Defendant's role in the organization keenly grabs this Court's attention because, as noted by the trial court, it indicated that defendant was not simply delivering drugs as part of a "minimal involvement in heroin" such as "an addict selling heroin to support his or her own habit." Rather, defendant was part of an organized criminal enterprise that was operating for a profit and posed a public health risk greater than the usual public health risk posed by a single individual who occasionally delivers heroin to others. Defendant's role in the organization was of considerable worth for the same reason because a defendant charged with the same crime under different facts would be less culpable than defendant was in this case.

We also reject defendant's assertion that the trial court improperly used the location of the offense as a reason for departing upward from the sentencing guidelines. A review of the trial court's statements indicates that the trial court focused on defendant's role within Ruff's significant drug trafficking operation. We are not convinced that the trial court's comment that the operation was "probably considered Mickey Mouse by Wayne or Kent County standards" was one of the trial court's reasons for departing upward from the sentencing guidelines. Rather, the statement explained the trial court's previous statement that the regional drug trafficking scheme was significant. It was not an independent reason for the trial court's departure.

Second, defendant contends that the trial court's stated reason was improper because OV 14 already took into account defendant's role in Ruff's organization. We disagree.

The trial court typically may not consider a factor that the sentencing guidelines already take into account. MCL 769.34(3)(b); *Babcock*, 469 Mich at 258 n 12. The trial court properly assesses 10 points for OV 14 if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). Leading includes directing or conducting other participants in the offense. *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014).

In this case, OV 14 did not account for defendant's role because there was no indication that defendant directed or conducted other participants in the offense. Rather, his presence in Hamilton-Lowe's home was strictly limited to parceling out Ruff's drugs according to what amounts she sold and collecting the proceeds from the sales for Ruff. It is apparent from the record that defendant neither directed Hamilton-Lowe nor Ruff in their respective participations. We agree with the trial court that assessment of 10 points for OV 14 would have been inappropriate, and we conclude that the sentencing guidelines did not adequately take into account defendant's role in this particular offense.

Third, defendant contends that the trial court did not adequately explain why the length of its departure was proportionate to his conduct. Again, we disagree.

The trial court's departure from the sentencing guidelines must be proportionate to the defendant's conduct and criminal history. *Smith*, 482 Mich at 300. This Court will not uphold a sentence "when the connection between the reasons given for departure and the extent of the departure is unclear." *Id*. at 304. The trial court must justify the particular departure it made by explaining "why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *Id*. The trial court may justify its departure by comparing the facts of the defendant's case against the sentencing grid to explain why its sentence is more proportionate, but this procedure is not mandatory. *Id*. at 306, 309.

In this case, the trial court stated that "because of the amount of the transactions, the significant volume of heroin that went through that home, and your mid-level management role as an enforcer, proportionate punishment does determine an upward departure." The trial court then immediately stated that sentence would be 36 to 240 months' imprisonment. While the trial court did not explicitly state the connection between the reasons the trial court gave for its departure and the extent of its departure, those reasons are clear in this case—defendant's conduct was more serious than that of other offenders who might engage in the same crime. While it is a better practice for the trial court to compare the extent of its departure against the sentencing grid, principles of proportionality do not require the trial court to do so in every case.

However, we will compare defendant's conduct to the sentencing guideline to explain why we are not convinced that the trial court abused its discretion. Defendant's offense is a Class D felony. See MCL 777.13m. Defendant was assessed 25 prior record variable (PRV) points and 6 OV points, placing him in cell D-I, which recommend a sentence of 0 to 17 months' imprisonment. See MCL 777.65. Defendant's minimum sentence was similar to how he would have been sentenced in cell D-VI, which recommends a sentence of 34 to 67 months' imprisonment for a defendant with the same PRVs but higher OVs. This reflects that the trial court's sentence was similar to a more severe offense of the same class of crime. Because the trial court departed upward for this reason, we are not convinced that its outcome fell outside the range of principled outcomes.

We affirm.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Michael J. Kelly